RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice forthcoming*)
    ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE LS 16, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br>a Delaware Corporation; RASIER, LLC,<br>a Delaware Limited Liability Company;<br>RASIER-CA, LLC, a Delaware Limited<br>Liability Company; and DOES 1 through<br>50, Inclusive,<br><br>                Defendants. | Case No. 3:23-cv-03758-CRB<br><br>**DECLARATION OF RANDALL S. LUSKEY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF ARIZONA**<br><br>Date:          November 17, 2023<br>Time:          10:00 a.m.<br>Courtroom:  6 – 17th Floor<br><br>Action Filed:  July 27, 2023<br>Trial Date:     None Set |

## DECLARATION OF RANDALL S. LUSKEY

I, Randall S. Luskey, declare pursuant to 28 U.S.C. § 1746:

1.      I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber").   I respectfully submit this declaration in support of Uber's Motion to Transfer Venue to the District of Arizona.   I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2.      The following are the names and addresses of all persons known to be parties and percipient witnesses to any of the matters raised in the pleadings in this action, and the matters upon which they are expected to testify:

a.      As alleged in the Complaint, Plaintiff resides in Arizona and is expected to testify as to the events and allegations contained in the Complaint.

b.      Upon information and belief, the City of Tempe Police personnel to whom the alleged assault was reported, are expected to testify as to the events and allegations contained in the Complaint.

c.      Upon information and belief, at least two of the Uber employees who investigated this alleged incident currently reside in Arizona and are expected to testify as to the events and allegations contained in the Complaint.

d.      Discovery will likely reveal other local witnesses, including, *e.g.* (1) healthcare providers who counseled or treated Plaintiff after the alleged assault, who may have relevant information regarding the damages and injuries Plaintiff allegedly suffered; and (2) individuals with whom Plaintiff and the alleged assailant spoke about the alleged assault, who may have relevant information regarding the events and allegations in Plaintiff's Complaint and/or the damages and injuries Plaintiff allegedly suffered.

3.      Attached as **Exhibit 1** is a true and correct copy of the Superior Court of California for the County of San Francisco's January 23, 2023 Order granting Uber's Motion to Stay or

Dismiss Based on *Forum Non Conveniens* in *In re Uber Rideshare Cases*, CJC-21-005188.

4.      Attached as **Exhibit 2** is a true and correct copy of the Superior Court of California for the County of San Francisco's August 11, 2017 Order Granting Uber's Motion to Dismiss Based on *Forum Non Conveniens* in *Jane Doe* v. *Uber Techs., Inc*., CGC-17-556481.

5.      Attached as **Exhibit 3** is a true and correct copy of the Superior Court of California for the County of San Francisco's March 24, 2020 Order Granting Uber's Motion to Stay Based on *Forum Non Conveniens* in *Jane Doe* v. *Uber Techs., Inc*., CGC-19-579901.

6.      Attached as **Exhibit 4** is a true and correct copy of the Superior Court of California for the County of San Francisco's July 1, 2019 Order Granting Uber's Motion to Dismiss Based on *Forum Non Conveniens* in *Gorne & Walker* v. *Uber Techs., Inc*., CGC-19-575852.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 15, 2023, in San Francisco, California.

                                                    */s/ Randall S. Luskey*
                                                    Randall S. Luskey

DECLARATION OF RANDALL S. LUSKEY IN SUPPORT OF
DEFENDANTS' MOTION TO TRANSFER VENUE                    CASE NO. 3:23-cv-03758-CRB

# EXHIBIT 1



San Francisco County Superior Court

JAN 2 3 2023

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550]<br><br>**IN RE UBER RIDESHARE CASES** | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188 |
| <u>This Order Relates to:</u><br><br>*Jane Doe LSA 35 v. Uber Techs., Inc., et al.,* CGC-21-592274<br><br>*Jane Doe LSA WHBE 3 v. Uber Techs., Inc., et al.,* CGC-20-584649 | ORDER ON DEFENDANTS AND CROSS-COMPLAINANTS UBER TECHNOLOGIES, INC. AND RASIER LLC'S MOTIONS TO STAY OR DISMISS BASED ON *FORUM NON CONVENIENS* |

On January 4, 2023, the motions of Defendants Uber Technologies, Inc. and Rasier LLC to stay or dismiss both of these actions based on *forum non conveniens* came on for hearing before the Court. Having considered the pleadings and papers filed in the case, and the argument of counsel presented at the hearing, both motions are hereby granted.

- 1 -

1

## PROCEDURAL AND FACTUAL BACKGROUND

2   These coordinated cases involve individual claims of sexual misconduct or assault against

3   Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber").  In general, the actions arise out

4   of Plaintiffs' use of the Uber app to arrange trips resulting in alleged sexual misconduct or assault against

5   Plaintiffs by their Uber driver.  Plaintiffs in the actions allege that Uber failed to implement appropriate

6   safety precautions to protect its passengers, such as adequate screening of drivers, adequate safety

7   features of the application, and adequate training of drivers regarding sexual harassment and/or sexual

8   assault.  The actions assert a wide range of claims, including general negligence; negligent hiring,

9   retention, and supervision; common carrier negligence; negligent failure to warn and failure to recall;

10  vicarious liability for torts committed by Uber drivers, including sexual assault, sexual battery, and false

11  imprisonment; intentional and negligent misrepresentation; negligent and intentional infliction of

12  emotional distress; breach of contract; strict products liability for design defect and failure to warn;

13  intentional concealment; negligence by misfeasance and nonfeasance; and fraud.

14  By an order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition

15  for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara,

16  Kern, and Los Angeles counties and ordered those actions stayed.  Since that time, over 1,300 additional

17  cases have been the subjects of add-on orders from this Court.  While nearly all of the coordinated cases

18  were filed in San Francisco County in the first instance, the vast majority of them—according to Uber,

19  nearly three-quarters of those cases where the location of the alleged incident is known—involve

20  incidents of sexual misconduct or assault that occurred outside California, in other states and even,

21  apparently, in foreign countries.

22  At the initial case management conference held on March 4, 2022, the Court expressed the view

23  that Uber's anticipated motions to stay or dismiss on *forum non conveniens* grounds represented a

24  threshold matter that it should resolve in the first instance so that it might determine which cases would

25  remain in the coordinated proceeding in California and which would be refiled in other states.

26  Accordingly, the Court directed the parties to meet and confer regarding discovery necessary to bring and

27  oppose *forum non conveniens* motions.  On August 10, 2022, the Court issued a Case Management Order

28

- 2 -

1    setting a schedule for such discovery based on the parties' detailed agreement, which provided, among

2    other things, that each Plaintiff would fill out fact sheets and produce copies of their trip receipts and

3    Uber would respond to special interrogatories by producing data and/or written responses.

4          Uber now has filed motions to stay or dismiss based on *forum non conveniens* or, in the

5    alternative, to dismiss for failure to join an indispensable party.[1]  Those motions are directed at two

6    individual cases that fall into two principal categories of out-of-state cases: so-called "Category 1" cases,

7    where the alleged incident occurred outside California and both the plaintiff and the alleged assailant

8    reside outside California; and "Category 2" cases, where the alleged incident occurred outside California,

9    the alleged assailant resides outside California, and the plaintiff resided outside California at the time of

10   the alleged incident and subsequently moved to California.  (LSA Opening Brief, 7.)[2]  Certain pertinent

11   case-specific facts relating to each of the motions are summarized below, while others are addressed in

12   the Discussion section of this Order.[3]

13   ### A.  Jane Doe LSA 35 (Category 1)

14         Plaintiff Doe LSA 35 alleges that in November 2017, she arranged for a ride utilizing the Uber app

15   and was sexually assaulted by the Uber driver.  (Atkins Decl., Ex. 1 ¶ 23.)  It is undisputed that the

16   incident took place in Texas, where Plaintiff resided at the time and currently resides.  (Exs. 10, 12.)  In

17   response to discovery, Plaintiff identified her then-boyfriend as a witness likely to have discoverable

18   information, as well as a police officer and investigator and a health care provider from whom she sought

19   treatment, all in Texas.  (Exs. 10, 13; Levin Decl., Exs. B, C.)  It is undisputed that the Uber driver also is

20   a Texas resident.  (Exs. 11, 15, 16.)  He entered a no contest plea and was found guilty of a criminal

21   charge arising out of the incident.  (Levin Decl., Ex. D.)

22         Plaintiff filed her complaint in San Francisco Superior Court on June 16, 2021.  (Ex. 1.)  On July

23

24   [1] Because the Court believes that Uber's *forum non conveniens* motions are well-founded, it need not
     reach the alternative ground.

25   [2] Uber represents that "most of the cases" fall into Category 1, but that "several" of the out-of-state cases
     fall into Category 2.  (WHBE Opening Brief, 7.)  In appendices to its papers, Uber lists the cases that

26   discovery to date shows fall within each of the categories.  There appear to be 925 cases listed under
     Category 1 and 37 under Category 2.  Thus, Uber's motions potentially bear on the proper forum for more

27   than two-thirds of the over 1,400 coordinated cases.
     [3] The Court has endeavored not to divulge any detailed information that any party has filed under seal.

28

2, 2021, Uber filed a cross-complaint against Roes 1-100 seeking equitable indemnity, contribution, declaratory relief, and contractual indemnity for Plaintiff's alleged damages. By joint stipulation and order filed July 30, 2021, the case was stayed pending a determination of Plaintiffs' coordination petition.

### B. Jane Doe WHBE 3 (Category 2)

Plaintiff Doe WHBE 3 alleges that in January 2020, she arranged for a ride utilizing the Uber app and was sexually assaulted by the Uber driver. (Atkins Decl., Ex. 1 ¶ 3.) Although Plaintiff is currently a California resident (*id.* ¶ 5), it is undisputed that the incident occurred in Hawaii, where she was then residing and working. (Exs. 12-14; Cubberly Decl., Exs. D, E.) Likewise, the driver who allegedly assaulted her, William Murray, is a Hawaii resident. (Ex. 15.) In the parties' forum-related discovery, Plaintiff did not identify any witnesses likely to have discoverable information (Ex. 12), and she neither reported the incident to law enforcement nor sought medical treatment in Hawaii. (Cubberly Decl., Ex. E.)

Plaintiff filed her complaint in San Francisco Superior Court on June 8, 2020. By order filed August 3, 2020, the Court denied Uber's motion to stay or dismiss based on *forum non conveniens* on the grounds, among others, that where the plaintiff is a California resident, the plaintiff's choice of a forum should rarely be disturbed, that Defendants had not shown that Plaintiff was not a California resident, and that on the record then before the Court, Uber had not established the driver's residence or that any other evidence or witnesses were located in Hawaii. After Uber filed a cross-complaint against the driver, Mr. Murray, the Court granted his motion to quash service of summons for lack of personal jurisdiction, finding among other things that Mr. Murray is a resident of Honolulu, Hawaii and that Plaintiff's claims "do not arise out of or relate to Murray's contacts with the [California] forum." (July 26, 2021 Order, 2.) While Uber later filed a renewed motion to stay or dismiss based on *forum non conveniens*, that motion was taken off calendar when the order granting the petition for coordination and request for a stay was granted. On September 14, 2021, Uber filed a complaint against Mr. Murray in Hawaii seeking indemnity and declaratory relief arising out of the action.

## LEGAL STANDARD

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc. § 410.30(a); see also *id.* § 418.10(a)(3).)  *Forum non conveniens* is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.)[4]

In ruling on a motion based on *forum non conveniens*, the court engages in a two-step process. First, it decides whether the alternative forum is a suitable place for trial. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 917.)  If it makes that finding the court next considers the private interests of the litigants and the interests of the public in retaining the action for trial in California.  (*Id.*)

The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.)  The residences of the plaintiff and defendant are also relevant.  If the plaintiff is a California resident, then the plaintiff's choice of forum is entitled to a presumption of convenience, and should rarely be disturbed unless the balance is strongly in favor of the defendant. (*Stangvik*, 54 Cal.3d at 754; *National Football League*, 216 Cal.App.4th at 917.)  If the plaintiff is not a California resident, however, the plaintiff's choice of forum is "entitled to due deference," but "not a strong presumption." (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.)

The public interest factors include avoidance of overburdening local courts with congested

---

[4] Plaintiffs misplace their reliance on cases involving personal jurisdiction rather than *forum non conveniens*. (E.g., LSA Opposition, 20.)  "Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true.  A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient." (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 706 (cleaned up).)

- 5 -

calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.) "Also of potential concern is the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v. Superior Court* (2017) 11 Cal.App.5th 197, 204 (cleaned up).)

The moving defendant bears the burden of proof on a motion based on *forum non conveniens*. (*Stangvik*, 54 Cal.3d at 918; *Fox Factory*, 11 Cal.App.5th at 204.) The burden is not an insuperable one; in particular, the defendant need not show that California is a "seriously inconvenient" forum. (See *Fox Factory*, 11 Cal.App.5th at 204-207 [rejecting standard adopted in *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604]; *National Football League*, 216 Cal.App.4th at 930-931.) "[T]he evidence before the court, which may include affidavits of the parties, discovery responses, and the undisputed general knowledge of the nature of the action, need only be sufficient to give the court the ability to soundly exercise its discretion regarding the applicability of the general considerations of the *Stangvik* . . . factors to the question of forum non conveniens." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1462.) To overcome the defendant's showing, the plaintiff may not rely upon unsupported allegations. (See *Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 589 ["If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced."].)

The initial determination of whether the alternative forum is suitable is nondiscretionary. (*Fox Factory*, 11 Cal.App.5th at 204.) Where the balancing of the public and private interest factors is reached, the factors are applied flexibly. (*Stangvik*, 54 Cal.3d at 751; *Fox Factory*, 11 Cal.App.5th at 204.) The trial court exercises its discretion in balancing the factors. (*Stangvik*, 54 Cal.3d at 751.)

## PERTINENT EVIDENCE AND AUTHORITY

At the threshold, the Court is constrained to address what is and is not pertinent to its ruling on the motions. First, both parties rely on a wide variety of newspaper articles, television reports, academic

- 6 -

articles, blog entries, websites, advocacy pieces, and other secondary authorities.  The Court may not take judicial notice of such materials for the truth of matters stated in them (and for the most part neither side has sought such notice in any event).  (E.g., *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147 fn. 5 [newspaper articles "are not proper authorities to establish the truth of the matters asserted therein"]; *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 824-827 [declining to take judicial notice of "the existence of a contemporary social movement" or of press releases and other exhibits for the truth of their contents]; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194 [declining to take judicial notice of the truth of the contents of websites and blogs, including those of newspapers].)  While the Court acknowledges that the *forum non conveniens* inquiry is not governed by strict evidentiary standards (*Morris*, 144 Cal.App.4th at 1462), the Court has considered these materials primarily as they may bear on the general considerations it is required to weigh under *Stangvik*.[5]

Second, both parties extensively cite to multiple unpublished trial court rulings, including prior rulings by this and other state courts in both individual cases and coordinated proceedings.  While relevant federal decisional opinions generally may be considered by a state court, even if they are unpublished,[6] the same is not true of unpublished state trial court rulings, which (as Plaintiffs correctly acknowledge) have no precedential value.  (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831.)  The Court considered these materials only to the degree that they may have persuasive value.  Both parties' requests for judicial notice of unpublished state trial court rulings are denied.[7]

---

[5] The parties have filed uncontested motions to seal certain materials.  The Court finds that the factors set forth in California Rule of Court 2.550(d) are satisfied, and grants those motions.

[6] "It does not violate the California Rules of Court to cite an unpublished federal opinion.  They may be persuasive, although not binding, authority." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 989 fn. 6.)

[7] The Court has taken notice of its own prior rulings, including the order granting coordination (LSA, Ex. A) and the jurisdictional ruling granting the driver's motion to quash for lack of personal jurisdiction in *Jane Doe WHBE 3*, which bears on the merits of Uber's arguments regarding the potential for conflicting rulings and whether the driver is an indispensable party.

- 7 -

## DISCUSSION

### I.   THERE IS A SUITABLE ALTERNATIVE FORUM FOR EACH CASE.

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "'[I]t is sufficient that the action can be brought, although not necessarily won, in the alternative forum.'" (*Id.* at 696.) "It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations." (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190.) Uber has offered to enter into just such a stipulation. Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions. (See WHBE Opposition, 7 ["Ms. Doe doesn't deny that Hawaii is a suitable forum"].)

### II.   THE PRIVATE INTEREST FACTORS

The private interests of the litigants include their residences and the location and availability of evidence and witnesses. (*Stangvik*, 54 Cal.3d at 751, 754-757.) The Court addresses each of the pertinent factors in turn.

#### A.  The Parties' Residences

Both Plaintiffs assert that a plaintiff's choice of forum is entitled to great deference. As noted above, however, the presumption of convenience that attaches to a plaintiff's choice of forum applies only to California residents. (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.) Thus, that Doe LSA 35, a Texas resident, chose to file suit in California "is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, 54 Cal.3d at 755.)

Doe LHBE 3 stresses that in 2006, the Court of Appeal quoted *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 for the propositions that "[a] plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident" and that a plaintiff's choice of forum can be disturbed only "if the balance is strongly in favor of the defendant." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464; LHBE Opposition, 1, 7.) However, those propositions are no longer

- 8 -

correct statements of California law, if they ever were.[8]  As one court explained,

> [A] resident of one of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum.  That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof.  We therefore disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight.

(*National Football League*, 216 Cal.App.3d at 929-930; see also *Fox Factory, Inc.*, 11 Cal.App.5th at 206 [agreeing with analysis in *National Football League* and rejecting the suggestion that "in every case great weight is required to overcome a nonresident plaintiff's forum choice"].)

Although Doe LHBE 3 currently is a California resident, she resided in Hawaii at the time of the alleged incident.  (Atkins Decl., Ex. 12 at 3.)  While her choice of forum is entitled to some deference in the analysis, California does not have a strong interest in assuring her a forum for the redress of grievances suffered in another state that provides her a suitable forum based on the happenstance that she later moved to California.  (See *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598 [the general rule that a court should stay rather than dismiss a case on forum non conveniens grounds if the plaintiff is a California resident is limited to "plaintiffs who were bona fide California residents at the time their causes of action arose."].)[9]

"Defendant's residence is also a factor to be considered in the balance of convenience.  If a corporation is the defendant, the state of its incorporation and the place where its principal place of business is located is presumptively a convenient forum."  (*Stangvik*, 54 Cal.3d at 755.)  However, "this presumption is not conclusive."  (*Id.* at 756.)  "A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action."

---

[8] "Many cases hold that the plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant.  But the reasons advanced for this frequently reiterated rule apply only to residents of the forum state . . . ."  (*Stangvik*, 54 Cal.3d at 754 (cleaned up).)

[9] Still less can a plaintiff who is a resident of a foreign country claim entitlement to any presumption in favor of her choice of a California forum.  (*Stangvik*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed."]; see also *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 741, fn. 7; *Fox Factory*, 11 Cal.App.5th at 206.)  While Uber asserts that one of the coordinated cases arises from an incident that occurred in Paraguay, the record is unclear as to the residence of the plaintiff in that case.  One of Uber's exhibits shows that of the drivers' last known residences, three were in Paraguay, Bolivia, and Mexico.  (Atkins Decl., Ex. 11.)

1    (*Id.* (footnote omitted).)  Here, while Uber is incorporated in Delaware and has its principal place of

2    business in California, it shows that it has multiple regional offices in states around the country, as well as

3    call centers that provide specialized support for critical incidents reported by Uber App users.  (Gilmore

4    Decl. ¶¶ 4-5.)  Thus, while this presumption favors Plaintiffs, it is not especially strong, and may be

5    overcome by other evidence.

6                    **B.  The Location Of Evidence And Witnesses**

7           As in *Stangvik*, the parties "disagree sharply" as to how the Court should assess and weigh in the

8    balance the location and availability of evidence and witnesses.  (54 Cal.3d at 756.)  Uber emphasizes that

9    in each case, the driver—the alleged perpetrator of the sexual assaults of which Plaintiffs complain—is a

10   resident of another state, and hence would not be subject to compulsory attendance to testify at trial in

11   California.  Uber also contends that other non-party witnesses, including friends identified by Plaintiffs,

12   police officers or other public safety personnel who may have responded to the incidents, and health care

13   providers and mental health professionals who may have treated Plaintiffs for their injuries, similarly may

14   not be subject to compulsory process.  Uber also stresses the importance of live testimony to the

15   presentation of the cases.  Plaintiffs, for their part, respond that the drivers' and other witnesses'

16   depositions could be taken, and that there are very few such third-party witnesses in the two exemplar

17   cases in any event.  Finally, Uber contends that any documentary evidence relating to the alleged

18   incidents is located in the states where they occurred.

19          For their part, Plaintiffs place a great deal of emphasis on the location of Uber's corporate

20   headquarters in California, where they contend that many witnesses and documents bearing on Uber's

21   alleged liability on various theories may be found.[10]  Uber, in response, points out that it is regulated by

22   states and localities, and conducts its own business operations on a state or regional basis, and that many

23   of the most pertinent witnesses it identified in its interrogatory responses are located outside California.[11]

24   _____

25   [10] Plaintiffs assert that according to its discovery responses, Uber has at least 1,112 current California
     employees and 1,748 former California employees who worked in subject matters relevant to this
     litigation.  (WHBE Opposition, 4.)  As those numbers make clear, Plaintiffs define the "relevant" subject
26   matters so broadly as to render the analysis nearly meaningless.
     [11] Uber shows that key corporate witnesses who are responsible for safety policies and programs reside
27   outside California, and that its operations and decision-making are spread across multiple offices in a
     number of different states.  (Reply, 10-11; Gilmore Decl. ¶ 4.)

28                                                   - 10 -

How the balance between these competing arguments is to be struck turns in large part on how the cases are characterized: as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices, or as corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims. The former view is far more persuasive to the Court since, as one federal court has pointed out, "to prevail in this case Doe must first prove that an assault took place." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31, 2017) 2017 WL 2352032, at *3; see also *id.* at *6 ["While some Uber party-witnesses may well reside in this District, their testimony will only be relevant at trial if Doe is able to prove her underlying battery and assault claims"] [granting motion to transfer venue of tort suit against Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority of evidence and key third party witnesses are in Minnesota and Minnesota's local interest in deciding the controversy is substantially stronger than California's].) The Court need not definitively resolve who has the better of this debate in order to decide these motions. (See *Stangvik*, 54 Cal.3d at 757 ["Before deciding whether the private convenience of the parties weighs in favor of plaintiffs or defendants, we consider the interests of the California public in retaining the trial of the actions in this state."].)

## III.   THE PUBLIC INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER.

In the Court's view, the public interest factors involved weigh heavily in favor of transfer, and warrant granting Uber's motions. Again, the Court addresses each of those factors in turn.

### A.  Avoiding Overburdening Local Courts With Congested Calendars

As the *Stangvik* Court recognized, "preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik*, 54 Cal.3d at 758.) California courts—and this Court in particular—are overburdened with litigation as a result of the backlog of cases stemming from the pandemic. Transferring these two cases—and many others like them—therefore would avoid overburdening congested California courts with foreign cases.

*Stangvik* and other cases are closely on point in this regard. In *Stangvik*, foreign plaintiffs filed suit in California against Shiley, a California corporation, for products liability arising out of alleged

- 11 -

1   defects in heart valves received by plaintiffs' decedents.  Defendants asserted that the cases should be

2   tried in the countries in which the plaintiffs resided, the valves were sold, decedents received medical

3   care, alleged fraudulent misrepresentations were made, and evidence regarding the provision of health

4   care and other matters existed.  (*Id.* at 750.)  Plaintiffs countered that California was the more convenient

5   place of trial because the valves were designed, manufactured, tested and packaged in California.  (*Id.*)

6   On the question of burden, the court noted that foreign plaintiffs had filed 108 actions in California

7   against Shiley relating to the heart valves, and that, according to plaintiffs, about one million pages of

8   documents are relevant to their actions, and the testimony of hundreds of witnesses might be required.

9   (*Id.* at 758.)  Defendants stated that the number of cases filed against Shiley involving the heart valves had

10  increased to 235 by the time the briefs were filed.  (*Id.*)

11         The Court found that the public interest factors "clearly" favored defendants' position, observing,

12  "If we hold that the present cases may be tried in California, it will likely mean that the remaining 108

13  cases involving the Shiley valve will also be tried here.  The burden on the California courts of trying

14  these numerous complex actions is considerable."  (*Id.* at 763.)  Further, the Court rejected the argument

15  that transferring the foreign cases would undermine the deterrent effect on Shiley, a California-based

16  manufacturer: "California's interest in deterring future improper conduct by defendants would be amply

17  vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor."  (*Id.*)

18         Similarly, in *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, the court

19  affirmed an order staying two actions brought by California residents seeking to recover for personal

20  injuries and wrongful death allegedly caused by asbestos exposure.  Most of the decedent's and his wife's

21  asbestos exposure was alleged to have occurred in Montana, where the decedent had lived and worked.

22  The court held that the public interests weighed in favor of Montana, observing,

23         California courts are already overburdened with asbestos litigation and have little or no interest in
           litigation involving injuries incurred outside of California by non-residents.  It seems unduly
24         burdensome for California residents to be expected to serve as jurors on a case having so little to
           do with California.  The competing interests of California and Montana strongly weigh in favor
25         of litigating this matter in Montana.

26  (*Id.* at 760; see also *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 ["Trial of the

27  action here would contribute to court congestion, as there are 20 separate plaintiffs whose damages would

28                                                    - 12 -

have to be considered."].)

Here, the number of cases pending in this Court far exceed the number of cases at issue in *Stangvik*, *Hansen*, and *Campbell*. The corresponding burden on this Court therefore would be considerably greater.[12] This factor therefore weighs heavily in favor of transfer.

Plaintiffs argue that granting the motions would impose burdens on other courts and judges around the country where multiple cases presumably would be refiled, and that the Court should consider the burden factor in light of the judicial system as a whole. They point to language in the California Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, *rev'd* (2017) 137 S.Ct. 1773, a products liability action brought against a pharmaceutical manufacturer by both California residents and nonresidents in which plaintiffs alleged they were injured by a prescription drug. The majority reasoned in part as follows:

> [Defendant] argues that it would be a waste of California's judicial resources to provide a forum for the nonresident plaintiffs. To be sure, a single court hearing the claims of hundreds of plaintiffs is a significant burden on that court. But the overall savings of time and effort to the judicial system, both in California and interstate, far outweigh the burdens placed on the individual forum court. The alternative the [defendant] proposes would result in the duplication of suits in numerous state or federal jurisdictions at substantial costs to both the judicial system and to the parties, who would have to deal with disparate rulings on otherwise similar procedural and substantive issues.

(*Id.* at 811-82.) The quote is taken out of context, however, as the California Supreme Court there was addressing factors bearing on a state's exercise of specific personal jurisdiction over a nonresident defendant, and its holding in that regard was later reversed by the U.S. Supreme Court.[13] As the Court itself pointed out, *forum non conveniens* presents distinct issues. (*Id.* at 809 & fn. 5.) While this Court's rulings may well have an indirect effect on the courts of other states, nothing in *Stangvik* or California law mandates consideration of those effects in the *forum non conveniens* analysis. Moreover, as discussed in

---

[12] Plaintiffs attempt to distinguish *Stangvik* on the ground that the actions in that case were not coordinated before a single judge. As discussed below, the Court does not believe that the pendency of a coordination proceeding renders a *forum non conveniens* motion unavailable in actions included in that proceeding. As the California Supreme Court recognized in the language quoted below, the burden on the Court of handling large numbers of cases brought by nonresidents is likely to be significant.
[13] Even in that different context, only Justice Sotomayor, who authored the sole dissent in that case, placed any weight on the argument regarding the burden on other courts. (See 137 S.Ct. at 1789 (dissenting op. of Sotomayor, J.).)

- 13 -

the next section, any additional burden on foreign states' courts is likely to be commensurate with their interest in resolving cases brought by their own residents arising out of injuries they occurred in those states.

### B. California's Interest Is Outweighed By That Of The States Where The Injuries Occurred

A second critical factor in the public interest balance relates to the competing interests of California, on the one hand, and Texas and Hawaii, on the other. Because the harms Plaintiffs allegedly sustained occurred outside California, California's interest in providing Plaintiffs a forum is outweighed by that of the states where their injuries occurred. In general, California courts "have little or no interest in litigation involving injuries incurred outside of California by nonresidents." (*Morris*, 144 Cal.App.4th at 1467.) "California courts have held that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 684 (cleaned up) [trial court properly granted forum non conveniens motion where, among other things, plaintiff's injury and defendant's allegedly negligent conduct took place in Virginia; "California courts have little interest in regulating conduct within Virginia's borders."]; see also *Hahn*, 194 Cal.App.4th at 1196 [courts consider the locus of "the effect, harm, and damages caused by defendants' alleged conduct"]; *Boaz*, 40 Cal.App.4th at 713 ["All this having been said, the important reason for affirming the forum non conveniens decision of the trial court is that the torts alleged in this case have nothing to do with California. They were not committed here; none of the affected appellants received her injury in this state; and none resides here. . . . We find no justification for California courts and juries to bear the burden of this litigation."].) Conversely, as Plaintiffs acknowledged at the hearing, foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for those injuries.

Here, just as in the closely analogous federal case cited above, this factor "strongly favors transfer":

While California has some interest in seeing this case decided here, as Uber is headquartered in

- 14 -

San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise
to Doe's suit occurred there. Doe's recovery in this action depends on proving the alleged sexual
assault and battery, which will require testimony from Minnesota witnesses and evidence located
in Minnesota. Furthermore, Minnesota has a greater interest in protecting a Minnesota citizen
against assault and battery than California does. Finally, while California undoubtedly has
significant interests in the conduct of corporations headquartered here, Minnesota has a
comparable interest in the conduct of corporations operating in Minnesota.

(*Doe v. Uber Technologies, Inc.*, 2017 WL 2352032, at *8.)

### C.  Applicable Law And The Interest In Avoiding Unnecessary Conflicts Of Laws

Yet a third significant factor in the public interest balance is the interest in trying the case in a forum familiar with the applicable law and the interest in avoiding unnecessary conflicts of laws. (*Fox Factory*, 11 Cal.App.5th at 204.) Allowing Plaintiffs' cases to remain in California, although they will likely be governed by the regulatory and tort laws of Texas and Hawaii, the states in which Plaintiffs were allegedly injured, would undermine that interest.

Plaintiffs ignore or understate the importance of other states' tort and regulatory laws in setting the standards by which Uber's liability for alleged sexual misconduct or sexual assaults by its drivers are likely to be determined. As Plaintiffs acknowledge, key legal issues in these cases will include, among others, whether Uber is a "common carrier" (LHBE Opposition, 15), whether it adequately screened drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect them against assailants. It is likely that those issues will be determined under the laws of the states where the alleged incidents occurred, not under California law. In particular, as Uber shows, it is regulated in Texas as a Transportation Network Company (TNC) under Texas statutes and regulations that govern whether a TNC is a common carrier (it is not) and what criminal background checks it must conduct before hiring drivers, among other issues. (In Hawaii, in contrast, such state laws have only recently been enacted.)

Moreover, Texas and Hawaii law rather than California law are likely to apply to some of the novel questions of tort law posed by these cases such as, for instance, whether a TNC owes its passengers a duty to install cameras in vehicles to safeguard their safety. Under California's governmental interest analysis, "although the law of the place of the wrong is not necessarily the applicable law for all tort actions, the situs of the injury remains a relevant consideration." (*Castro v. Budget Rent-A-Car System,*

- 15 -

*Inc.* (2007) 154 Cal.App.4th 1162, 1180.)  Where an incident and the plaintiff's injury occurred within another state's borders, the other state has a presumptive interest in controlling the conduct of the tortfeasor, absent some other compelling interest to be served by applying California law.  (*Id.* [applying Alabama law in personal injury case involving car accident that took place in Alabama]; *Boaz,* 40 Cal.App.4th at 713 ["The circumstances of this case—including the site of the tortious acts and their manifestation, and the lack of a significant California connection to those events—provide strong reasons to believe that a California court would look to the substantive law of New York."].)  Thus, California has no interest in applying its law "in a case where there are no California plaintiffs and no one sustained injuries in California"; under those circumstances, "California's interest in applying its law is hypothetical, since no actual harm occurred in California giving rise to an interest to deter conduct or compensate victims." (*Chen v. Los Angeles Truck Centers, LLC* (2019) 42 Cal.App.5th 488, 493.)

It is also likely that foreign law would apply to the claims of Jane Doe WHBE 3, even though she currently is a California resident.  In weighing California's interest in applying its own law against another state's, "it is generally appropriate for a court to accord limited weight to California's interest in providing a remedy for a current California resident when the conduct of the defendant from whom recovery is sought occurred in another state, at a time when the plaintiff was present in (and, in the present situation, a resident of) that other state, and where that other state has its own substantive law, that differs from California law, governing the defendant's potential liability for the conduct that occurred within that state." (*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 76.)

Accepting Plaintiffs' position could require the Court to apply Texas and Hawaii law in the two cases that are the subject of the pending motions.  Moreover, that adverse effect would be dramatically magnified, were the Court's ruling to be applied to hundreds of other cases arising out of alleged incidents that occurred in some 50 jurisdictions across the United States.  Although the Court does not decide the issue, "[i]t is sufficient to point out that the fact that a California court would have to untangle problems in conflict of law is itself a basis to apply the doctrine of forum non conveniens." (*Id.* (cleaned up).)

**D.  The Public Interest Factors Control**

In the Court's view, these public interest factors overwhelmingly apply here in favor of granting

- 16 -

1    Uber's motions as to both cases.  Even where it is "probable that both parties will suffer some

2    disadvantage from trial in their home forums" because there are witnesses and documentary evidence in

3    both states, it is appropriate to grant a *forum non conveniens* motion where, as here, the public factors

4    "clearly favor" transfer.  (*Stangvik*, 54 Cal.3d at 757, 762-763.)  For example, in *Campbell*, an action

5    arising out of an airplane crash, virtually all of the evidence relating to damages was in a foreign

6    jurisdiction, and the evidence relating to the design and manufacture of the plane was in the United States.

7    "Thus, each side would suffer some disadvantage from trial in its home forum.  The public interest,

8    however, favors granting the motions." (69 Cal.App.4th at 1542; see also *Century Indemnity Co. v. Bank*

9    *of America* (1997) 58 Cal.App.4th 408, 413-414 [although "[t]he proximity of evidence and witnesses

10   favors neither forum," trial court properly exercised discretion in staying action given "Hawaii's strong

11   public policy interest in interpreting the insurance policies and the lack of a strong countervailing

12   justification for proceeding . . . in California"].)  Because Texas and Hawaii's interests in deciding

13   Plaintiffs' cases are substantially stronger than California's, the public interest factors control.

14

15   **IV.   THE *FORUM NON CONVENIENS* ANALYSIS IS NOT NEGATED BY THE**
         **COORDINATION PROCEEDING.**

16          As noted above, at the very first case management conference in this case, the Court identified the

17   *forum non conveniens* issue as the critical threshold issue to be decided in the coordinated proceedings.

18   Nine months after the Court first adopted this approach, and after the parties have completed substantial

19   discovery on forum-related issues and extensively briefed these motions, Plaintiffs now invite the Court

20   to jettison the entire approach, arguing that the Court should deny or defer ruling on the motions and

21   instead develop a bellwether selection process in which forum considerations would be only one factor in

22   the selection of bellwether cases. (LSA Opposition, 17-18.)  Plaintiffs argue, in essence, that the mere

23   existence of the coordination proceedings negates the need to conduct any convenient forum inquiry at

24   all.  Moreover, Plaintiffs now appear to back away from the basis for their own stipulation, embodied in

25   the Court's order, that the Court's ruling on these motions would serve as a basis for deciding how other

26   similar cases should be handled.  By the terms of that stipulation and order, following this Court's rulings

27   on the instant motions, "the parties shall meet and confer to discuss a process stipulating to or contesting

28                                                              - 17 -

the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding." (Aug. 10, 2022 Order, 4 ¶ 7.) Yet Plaintiffs now protest that each *forum non conveniens* motion must be decided on an individualized basis, and that there is no authority for "extrapolating" the Court's rulings in these two cases to any others included in the coordinated proceeding. (LSA Opposition, 5, 8-9.) The Court could not disagree more.

First, there is no merit to Plaintiffs' position that the Court's approach is somehow inconsistent with coordination or that inclusion of an individual case in a coordinated proceeding necessarily makes a *forum non conveniens* motion unavailable. Contrary to Plaintiffs' argument, the Court's order setting *forum non conveniens* as its first order of business was entirely consistent with the order granting coordination, which stated that, among other issues, the doctrine's application to the coordinated cases presents "identical threshold and central legal questions that should be decided by one judge." (Dec. 9, 2021 Order, 3.) Indeed, California case authority makes clear that forum motions are equally available in cases included in coordination proceedings. (See, e.g., *Bristol-Myers Squibb Co.*, 1 Cal.5th at 789-790, 809 fn. 5 [stating that defendant in coordinated proceedings involving actions by 86 California residents and 592 residents of 33 other states is "free to make such a showing [that the cost of litigating plaintiffs' claims in San Francisco is excessive or unduly burdensome compared to other relevant forums] on a motion asserting forum non conveniens"]; *Martinez v. Ford Motor Co.* (2010) 185 Cal.App.4th 9, 21 [reversing *forum non conveniens* order dismissing products liability action included in coordinated proceeding against tire and car manufacturers on ground that motion was prejudicially untimely because defendants took extensive discovery beyond the scope of that needed to establish the basis for the motion].)

It is no answer to say, as Plaintiffs assert, that the convenience factors do not matter because few of the cases will actually be tried after the Court selects bellwether cases. For one thing, there is no way of knowing whether the two cases that are the subject of Uber's motions will be selected as bellwethers. More importantly, the incremental burden on the Court of managing more than 1,400 cases rather than "only" 400 or so will itself be substantial: it undoubtedly will necessitate more motion practice and case management conferences, and may require the selection of a larger number of bellwethers. Plaintiffs cite

- 18 -

no authority—and there is none of which the Court is aware—which stands for the proposition that a court should ignore the potential burden on congested local courts posed by the filing of numerous foreign cases, the strength of the different states' interests in trying the cases, the potential applicability of multiple states' laws, and the other *forum non conveniens* factors merely because a bellwether process may be an available mechanism to manage the cases.

At the hearing, Plaintiffs for the first time proposed what they termed "a structural solution" to the Court's concerns. Under that proposal, Plaintiffs would stipulate to select only "California cases" (that is, cases in which the plaintiff was a resident of California at the time of the incident, remains a California resident, and the incident occurred in California) for the bellwether pool, unless Uber decided to select other cases as its bellwether candidates. Plaintiffs would further stipulate that all the non-California cases would be stayed for all purposes during the pendency of the bellwether process, unless the plaintiffs in those actions objected to a stay and wished to proceed in another forum. Finally, in the event the bellwether trials do not result in a resolution of all of the coordinated cases and the Court were to remand individual cases to the counties where they were originally filed (Cal. R. Ct. 3.542), Plaintiffs would agree that renewed *forum non conveniens* motions would not be untimely. As Uber pointed out, however, this novel proposal essentially begs the question of why the non-California cases were filed in this forum in the first place. Moreover, to the extent that the objective of bellwether trials is to yield representative verdicts in order to facilitate a global resolution of multiple coordinated actions,[14] it seems appropriate to the Court that non-California cases be refiled in other states, such that the resulting verdicts may more accurately reflect the governing law and jury venires in the fora with the greatest interest in their resolution.

Second, Plaintiffs' position that Uber is required to bring motions in each individual case subject to transfer under the *forum non conveniens* doctrine obviously would be unworkable, given the unusually large number of cases pending in this Court. Nor does the Court agree that it lacks the authority to devise

---

[14] "The primary purpose of a 'bellwether' trial is to educate the parties and the court about the strengths and weaknesses of the many underlying cases." (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 574 fn.3, review granted, S. 275134 (Aug. 17, 2022), citing 4 Newberg on Class Actions (5th ed. 2021) § 11:13.)

procedures to apply its rulings to groups or categories of cases, rather than merely issuing one-off rulings that would apply to a single case at a time. "The trial court has broad discretion to fashion suitable methods of practice in order to manage complex litigation. This includes requiring standard motions to minimize duplication where issues are similar, and the issuance of standard orders." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 295; see also, e.g., *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 531 ["judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants. . . . [T]he trial court is given the discretion to be flexible with complex cases." (cleaned up)]; *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 333-336 [trial court presiding over complex insurance coverage dispute involving 25 insureds, over 40 insurers, and claims arising from numerous jurisdictions, had inherent authority to defer hearing summary judgment motions filed by parties until after it had decided myriad choice of law issues presented by case].)

Third, and most broadly, Plaintiffs' argument seems to assume that the purpose of the coordination procedure is, as Uber puts it, to "nationalize" cases that could otherwise be brought in states across the country, akin to a federal MDL. However, there is nothing in the coordination statutes or rules that suggests any intent on the part of the Legislature to transform California state courts into a national hub for tort litigation. Code of Civil Procedure section 404 authorizes a petition for coordination to the Judicial Council "[w]hen civil actions sharing a common question of fact or law are pending in different courts," referring to different California state courts, which of course are the only courts over which the Judicial Council has jurisdiction. (See also Cal. R. Ct. 3.521(a)(5) [coordination petition shall include title and case number of any other action known to the petitioner to be pending "in a court of this state" that shares a common question of fact or law with the included actions]; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 807-811 [considering trial court's order denying coordination in light of the objectives and effects of the coordination procedure as they relate to "hundreds of cases on the docket of not only this court but of numerous other trial courts throughout the state"].)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, Defendant's motions to stay both actions are granted.  As previously directed, the parties, consistent with their stipulation and the Court's order, shall meet and confer to devise a process to stipulate to or contest the applicability of the Court's rulings on these motions to the remainder of the cases within this coordinated proceeding, and shall be prepared to address those issues at the next case management conference on February 21, 2023.  A joint case management conference statement shall be filed at least five court days prior to the case management conference.


IT IS SO ORDERED.


Dated: January 23, 2023

Ethan P. Schulman
Judge of the Superior Court

-21-

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 23, 2023, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  January 23, 2023

Mark Culkins, Interim Clerk

By:  _____
Ericka Larnauti, Deputy Clerk

# EXHIBIT 2

1    Robert F. Tyson, Jr., Esq. (Bar No. 147177)
    Susan L. Oliver, Esq. (Bar No. 160902)
2    Tracey L. Angelopoulos, Esq. (Bar No. 220095)
    TYSON & MENDES, LLP
3    5661 La Jolla Boulevard
    La Jolla, CA  92037
4    Telephone: (858) 459-4400

**F I L E D**
San Francisco County Superior Court

AUG 11 2017

CLERK OF THE COURT
BY: _Gina Gonzales_
          Deputy Clerk

5    Attorneys for Defendants Uber Technologies, Inc. and Rasier, LLC

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JANE DOE, | ) Case No. CGC-17-556481 |
| | ) [Complaint Filed: 01/17/2017] |
| Plaintiff, | ) |
| | ) [~~PROPOSED~~] ORDER GRANTING |
| v. | ) DEFENDANTS UBER TECHNOLOGIES, |
| | ) INC.'S AND RASIER, LLC'S MOTION |
| UBER TECHNOLOGIES, INC., a Delaware | ) TO DISMISS OR IN THE |
| Corporation, RASIER, LLC, a Delaware | ) ALTERNATIVE, STAY THE CASE |
| Limited Liability Company and DOES I-V, | ) BASED ON FORUM NON CONVENIENS |
| Inclusive Defendants | ) |
| | ) Date:   August 11, 2017 |
| | ) Time:  9:30 a.m. |
| Defendants. | ) Dept:   302 |
| | ) Judge:   Hon. Harold E. Kahn |
| | ) Reservation No. 06090804-01 |
| | ) |
| | ) Trial Date:  None Set |
| | ) |
| | ) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

    **PLEASE TAKE NOTICE** that on August 11, 2017 at 9:30 a.m. in Department 302 of this

Court, Defendants UBER TECHNOLOGIES, INC.'s and RASIER, LLC's motion for an order

dismissing the case based on forum non conveniens or in the alternative, staying the case came on

regularly for hearing.  All appearances are noted in the record.

/ / /

/ / /

1

1    After considering the motion and supporting documents and argument by counsel, the

2 Court issues the following ruling.

3    DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC's Motion For Support To

4 Dismiss Or In The Alternative, Stay The Case Based On Forum Non Conveniens ~~Defendants Uber~~

5 ~~Technologies, Inc. and Rasier, LLC's motion to dismiss for forum non conveniens~~ is **GRANTED**.

6 Michigan is a suitable alternative forum because defendants are subject to a Michigan court's

7 jurisdiction and none of plaintiff Jane Doe's claims would be barred by the statute of limitations.

8 Plaintiff's argument that Michigan is not a suitable forum because of the recently enacted

9 legislation limiting the circumstances in which transportation network companies like Uber are

10 deemed employers of their drivers lacks merit. "[S]o long as there is jurisdiction and no statute of

11 limitations bar, a forum is suitable where an action can be brought, although not necessarily won."

12 (*Shiley, Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 (internal quotation omitted).) "[A]

13 showing that recovery would be more difficult or even impossible in a foreign forum does not

14 demonstrate that the alternative forum is inadequate." (*Id.* at 133 (internal quotation omitted).) Nor

15 does the "no remedy at all" exception apply because this case does not present one of those rare

16 circumstances where the alternative forum lacks an "independent judiciary or due process of law."

17 (*Id.* at 134.) The private and public interest factors weigh in favor of this case being venued in

18 Michigan rather than California. As to the private interest factors, the incident occurred in

19 Michigan, plaintiff and the Uber driver reside in Michigan, and most or all of the potential

20 witnesses and documentary evidence are in Michigan. Defendants would likely not be able to

21 compel out-of-state witnesses to appear in a California proceeding, which would likely hinder their

22 defense. Defendants' corporate witnesses with knowledge of Uber's Michigan operations are

23 located in Chicago, Illinois, not San Francisco. As to the public interest factors, California has only

24 a minimal interest in adjudicating an incident that occurred between Michigan residents and

25 involves Uber's compliance with Michigan rules. Michigan has a much greater interest in resolving

26 a dispute involving Michigan residents and the way Uber operates in Michigan. Dismissal of the

27 case, rather than a stay, is warranted because plaintiff has no connection with California.

28 (*Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598.)

2

1    **IT IS SO ORDERED.**

2    DATED:    B/11/17

3                                          Hon. Judge Harold E. Kahn

4                                          JUDGE OF THE SUPERIOR COURT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   CGC-17-556481   JANE DOE vs. UBER TECH., INC., ET AL.

3

[PROPOSED] ORDER GRANTING UBER TECHNOLOGIES, INC.'S AND RASIER, LLC'S MOTION TO DISMISS

# EXHIBIT 3

1  Steven R. Disharoon (State Bar No. 273170)
   sdisharoon@wshblaw.com
2  Anoush C. Holaday (State Bar No. 291413)
   aholaday@wshblaw.com
3  **WOOD, SMITH, HENNING & BERMAN LLP**
   1401 Willow Pass Road, Suite 700
4  Concord, California 94520-7982
   Phone: 925 222 3400 ♦ Fax: 925 356 8250
5
   Attorneys for Defendants, UBER TECHNOLOGIES, INC. and RASIER, LLC
6
7
8                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9                     **IN AND FOR COUNTY OF SAN FRANCISCO**
10

| | |
|---|---|
| 11  JANE DOE, an Individual, | Case No. CGC-19-579901  *STAY* |
| 12      Plaintiff, | **[PROPOSED ORDER] GRANTING MOTION TO ~~DISMISS~~ BASED ON FORUM NON CONVENIENS** |
| 13  v. | |
| 14  UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware | **DATE:  January 14, 2020** |
| 15  Limited Liability Company, | **TIME:  9:30 a.m.** **DEPT.:  302** |
| 16      Defendants. | **RESERVATION NO.:  12100114-09** |
| 17 | Action Filed:        October 9, 2019 |
| 18 | Trial Date:        None Set |

19

20        This action arises out of an alleged sexual assault on Plaintiff, a Texas resident represented

21  by Texas counsel, by an Uber driver, also a Texas resident, during a ride in Texas on April 27,

22  2017.  In April 2019, six months before filing the instant action, Plaintiff filed an action against the

23  driver and Uber in Texas state court, but has since voluntarily dismissed ("nonsuited") that action.

24        Texas is a suitable alternative forum because Uber is subject to the personal jurisdiction of

25  Texas courts, none of Plaintiffs' claims would be barred by the statute of limitations, and Texas can

26  provide an adequate remedy for Plaintiffs' claims.  (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744,

27  752.)

28        Texas Civil Practice & Remedies Code "section 16.0045(a) applies to a suit for personal

LEGAL:11009-0304/13749574.1

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO ~~DISMISS~~ *Stay*

1  injury, which includes claims for negligence. There is no language restricting this particular

2  limitations statute to certain types of personal-injury claims; hence, there is nothing in the statute to

3  indicate that the legislature intended to limit this provision to causes of action against only the

4  perpetrators of sexual assault." (*Stephanie M. v. Coptic Orthodox Patriarchate Diocese of Southern*

5  *U.S.* (2011) 362 S.W.3d 656, 659.) Although Plaintiff is correct that *Stephanie M.'s* holding was one

6  of first impression, review was denied and it has been cited with approval numerous times.  (See

7  *Hernandez v. Baylor Univ.* (W.D. Tex. 2017) 274 F.Supp. 602, 623; *Doe v. Roman Catholic*

8  *Archdiocese of Galveston-Houston ex rel. Dinardo* (2012) 362 S.W.3d 803, 809-810; *Doe v.*

9  *Catholic Diocese of El Paso* (2011) 362 S.W.3d 707, 717 n.8.)  In any event, Plaintiff herself filed a

10  timely action in Texas within two years of the incident.

11        As a non-California resident, Plaintiff's choice of forum is accorded "due deference," but not

12  a strong presumption.  (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216

13  Cal.App.4th 902, 929.)

14        The balance of private and public interest factors also favors Texas.  As to the private

15  interest factors, Plaintiff's causes of action asserting negligent hiring, assault, false imprisonment,

16  fraud, and IIED liability against Defendants are based on an incident which allegedly occurred in

17  Texas.  Plaintiff, a Texas resident, was allegedly sexually assaulted by an Uber driver, also a Texas

18  resident. (Compl. ¶¶ 3, 5; Plf.'s MPA ISO Opp., 3.)  Most potential witnesses and documentary

19  evidence related to the incident are located in Texas.  The cost and ease of obtaining access to these

20  witnesses and documents weigh in favor of Texas as a forum.  Furthermore, those non-resident

21  witnesses probably would not be subject to compulsory attendance to testify at trial in

22  California. (See *Stangvik v. Shiley Inc.*, 54 Cal.3d at 751 [the private interest factors are those that

23  make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive,

24  such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the

25  availability of compulsory process for attendance of unwilling witnesses]; *Toyota Motor Corp. v.*

26  *Superior Court* (2011) 197 Cal.App.4th 1107, 1118.)  That Mr. Hanna has pled the Fifth

27  Amendment does not relieve Plaintiff of the need to prove that an assault actually took place.  All of

28  the potential witnesses and documentary evidence relating to that assault are in Texas, not in

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO ~~DISMISS~~ stay

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925.222.3400 ♦ FAX 925.356.8250

1   California.

2          As for the public factors, Texas has a strong interest in the protection of its citizens from

3   sexual assault by other Texas citizens and from fraudulent misrepresentations by a corporation

4   operating in Texas.  As a party, Uber would still be subject to discovery in Texas.  In contrast,

5   California has no significant interest in adjudicating an incident that occurred between Texas

6   residents, and only a minimal interest in the out-of-state conduct of companies that happen to have

7   their principal corporate headquarters in California.  (See, e.g., *Doe v. Uber Technologies, Inc.*

8   (N.D. Cal. May 31, 2017) 2017 WL 2352032 [granting motion to transfer venue of tort suit against

9   Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota,

10  where the majority of the evidence and key third party witnesses are in Minnesota and Minnesota's

11  local interest in deciding the controversy is substantially stronger than California's].)  Neither the

12  enactment of Cal. Code of Civ. Proc. § 340.16 nor of AB 5, which did not become effective until

13  January 1, 2019 and January 1, 2020, respectively, establishes that California has any substantial

14  interest in such a dispute involving primarily non-California residents and arises out of an incident

15  that took place in a different state.

16         At this time, the California action is ordered stayed.  Should Plaintiff re-file in Texas, and if

17  Texas is shown to be a suitable forum in regard to statutes of limitations, the Court will dismiss this

18  case.  The Court likewise will dismiss this case if Plaintiff does not re-file in Texas within 30 days

19  of notice of entry of this Order.  If, however, Plaintiff re-files in Texas and faces a statutes-of-

20  limitations bar, Plaintiff may move to lift the stay, and the Court will then determine whether this

21  case should be dismissed based on Plaintiff's voluntary dismissal of her previously filed Texas case.

22         **IT IS SO ORDERED**.

23  DATED: *Mar. 24, 2020*

24

25                                                      _____

26                                                      JUDGE OF THE SUPERIOR COURT

27                                                      ETHAN P. SCHULMAN

28

LEGAL:11009-0304/13749574.1                    -3-

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO DISMISS
                                                            *stay*

# EXHIBIT 4

Proposed
for Defendant Uber
Technologies, Inc.

**FILED**

San Francisco County Superior Court

JUL 1 2019

CLERK OF THE COURT
BY: _____
Deputy Clerk

1

2

3

4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     COUNTY OF SAN FRANCISCO

10

11   | BRIAN GORNE and ADRIENNE WALKER, | )  | Case No. CGC-19-575852 |
12
     Plaintiff,

     v.

     UBER TECHNOLOGIES, INC., a Delaware
     Corporation, AND THE FIRST DOE
     THROUGH ONE HUNDRETH DOE,
     INCLUSIVE,

     Defendants.

BRIAN GORNE and ADRIENNE WALKER,     )  Case No. CGC-19-575852
                                     )  [Complaint Filed: May 9, 2019]
              Plaintiff,             )
                                     )
       v.                            )  [~~PROPOSED~~] ORDER GRANTING
                                     )  DEFENDANT UBER
UBER TECHNOLOGIES, INC., a Delaware  )  TECHNOLOGIES, INC.'S MOTION TO
Corporation, AND THE FIRST DOE       )  DISMISS BASED ON FORUM NON
THROUGH ONE HUNDRETH DOE,            )  CONVENIENS
INCLUSIVE,                           )
                                     )  Date: July 1, 2019
              Defendants.            )  Time: 9:30 A.M.
                                     )  Dept: 302
                                     )  Reservation No. 05160701-07
                                     )  Judge: Hon. Ethan Schulman
                                     )  Trial Date: Not Set
                                     )

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on July 1, 2019, at 9:30 a.m. in Department 302 of this Court, Defendant UBER TECHNOLOGIES, INC.'S motion for an order dismissing the case based on *forum non conveniens* came on regularly for hearing. All appearances are noted in the record.

/ / /

/ / /

/ / /

/ / /

1

[~~PROPOSED~~] ORDER GRANTING DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS BASED ON
FORUM NON CONVENIENS

1           After considering the motion and supporting documents and argument by counsel, the

2    Court ORDERS as follows:

3           Defendant Uber Technologies, Inc's Motion to Dismiss is GRANTED.

4           Washington is a suitable alternative forum because Uber is subject to the personal

5    jurisdiction of Washington courts, none of Plaintiffs' claims would be barred by the statute of

6    limitations, and Washington can provide an adequate remedy for Plaintiffs' claims. (*Stangvik v.*

7    *Shiley Inc.* (1991) 54 Cal.3d 744, 752; Boaz v. Boyle & Co. (1995) 40 Cal.App.4th 700, 710.)

8    ~~Plaintiff Gorne's jurisdictional ties to California are irrelevant~~. As a non-California resident, ~~his~~

9    *Plaintiff's* choice of forum is accorded "due deference," but not a strong presumption. (*National Football*

10   *League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 929.)

11          The balance of private and public interest factors favor Washington. As to the private

12   interest factors, all of Plaintiffs' causes of action asserting direct and vicarious liability against

13   Uber are based on an incident which allegedly occurred in Washington. Mr. Gorne, a Washington

14   resident, was allegedly assaulted by an Uber driver, also a Washington resident, who received a

15   license as a rideshare driver in Washington, and who contracted with Uber's subsidiary in

16   Washington. (Gorne Decl. 3; Holdsworth Decl. 4, 6). Most potential witnesses and documentary

17   evidence related to the incident and the treatment of Mr. Gorne's injuries are located in

18   Washington. The cost and ease of obtaining access to these witnesses and documents weigh in

19   favor of Washington as a forum. Furthermore, those non-resident witnesses probably would not be

20   subject to compulsory attendance to testify at trial in California. (See *Stangvik v. Shiley Inc.*, *supra*,

21   54 Cal.3d at 751 [the private interest factors are those that make trial and the enforceability of the

22   ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of

23   proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for

24   attendance of unwilling witnesses]; *Toyota Motor Corp. v. Superior Court* (2011) 197 Cal.App.4th

25   1107, 1118.) While Mr. Gorne identifies two blogs on Uber's webpage written by former

26   executives of Uber as statements constituting some of the alleged misrepresentations by Uber, it

27   appears undisputed that they are attributable to Uber, and the persons that wrote them on Uber's

28   behalf are not material witnesses to disputed facts.

1        As for the public factors, Washington has a strong interest in the protection of its citizens

2  from assault and battery by other Washington citizens and from fraudulent misrepresentations by a

3  corporation operating in Washington. Washington also has an interest in ensuring that Uber and

4  Uber drivers comply with local rules and regulations in conducting business in Washington. In

5  contrast, California has no significant interest in adjudicating an incident that occurred between

6  Washington residents and involves Uber's compliance with Washington regulations, and only a

7  minimal interest in the out-of-state conduct of companies that happen to have their principal

8  corporate headquarters in California. (See, e.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31,

9  2017) 2017 WL 2352032 [granting motion to transfer venue of tort suit against Uber based upon

10  alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority

11  of the evidence and key third party witnesses are in Minnesota and Minnesota's local interest in

12  deciding the controversy is substantially stronger than California's].)

14  **IT IS SO ORDERED.**

Dated: July 1, 2019

JUDGE OF THE SUPERIOR COURT

ETHAN P. SCHULMAN

[PROPOSED] ORDER GRANTING DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS BASED ON
FORUM NON CONVENIENS